**Gordon Helmer ANDERSON, Appellant,**

**Maxine Anderson, Plaintiff,**

v.

**Neil Raymond CHRISTOPHERSON, Respondent,**

**Dennis Christopherson, Respondent.**

**No. A11–191.**

Court of Appeals of Minnesota.

Aug. 8, 2011.

James S. Ballentine, William R. Sieben, Schwebel, Goetz & Sieben, P.A., Minneapolis, MN, for appellant.

Chad D. Dobbelaere, Tewksbury & Kerfeld, P.A., Minneapolis, MN, for respondent Neil Christopherson.

Troy A. Poetz, Kristi D. Stanislawski, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for respondent Dennis Christopherson.

Considered and decided by BJORKMAN, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's decision granting summary judgment to

respondents and dismissing his claims alleging that respondents are liable pursuant to Minn.Stat. § 347.22. Because we conclude that the district court erred in its application of the statute, we reverse and remand for trial.

## FACTS

On September 27, 2009, appellant Gordon Helmer Anderson was walking his small dog, Tuffy. When appellant and Tuffy walked in front of respondent Dennis Christopherson's house, a dog named Bruno ran out, picked Tuffy up in his jaws, and would not let go. Appellant attempted to separate the dogs and in doing so, fell and broke his hip.

Appellant sued Dennis and Dennis's son, respondent Neil Raymond Christopherson, for damages. Neil owned Bruno, and the two were staying at Dennis's house when the incident occurred. Appellant asserted claims of negligence [1] and strict liability under Minn.Stat. § 347.22—the dog-owner's liability statute. Neither Neil nor Dennis was present when Bruno attacked Tuffy, but appellant claimed that both were liable under the statute because Neil owned Bruno and because Dennis was "harboring" Bruno, as that term is used in the statute, at the time of the attack.

On cross-motions for summary judgment, the district court concluded that, as a matter of law, the dog-owner's liability statute does not provide relief for appellant because at the time of the attack, Bruno was focused on Tuffy, rather than appellant, and because Dennis was not harboring Bruno. This appeal follows.

## ISSUES

I. Did the district court err by concluding that Bruno's exclusive focus on Tuffy

at the time of the attack precludes application of the dog-owner's liability statute?

II. Did the district court err by determining that Dennis was not harboring Bruno?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). The district court concluded that Minn.Stat. § 347.22 does not impose liability on either Dennis or Neil based on the undisputed facts of this case. When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

## I.

Minn.Stat. § 347.22 provides:

If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable.

The supreme court has determined that the dog-owner's liability statute is a strict-liability statute and that common-law negligence defenses are inapplicable. *Seim v. Garavalia*, 306 N.W.2d 806, 812 (Minn. 1981); *Lavalle v. Kaupp*, 240 Minn. 360, 363–64, 61 N.W.2d 228, 230–31 (1953). A framework for determining if the interac-

---

**1.** The district court's resolution of appellant's negligence claims is not raised in this appeal.

tion between the dog and the injured person triggers the liability of the dog's owner has evolved in Minnesota caselaw interpreting the statute.

One piece of the framework was put into place when this court was asked to determine if the statute applies when a dog's non-aggressive behavior causes injuries. In *Boitz v. Preblich*, a dog bumped into the plaintiff, causing him to fall and break his wrist. 405 N.W.2d 907, 909 (Minn.App. 1987). The district court granted summary judgment to the dog owner, reasoning that the strict-liability statute "should be limited to apply only to bites or other 'vicious or dangerous' attacks by dogs." *Id.* at 910. We reversed, based on the plain meaning of the phrase "attacks or injures" in the statute, and held that "injuries inflicted by a dog outside the scope of a vicious attack are not, as a matter of law, excluded from coverage under the statute." *Id.*

In *Lewellin v. Huber*, the supreme court further refined the ambit of dog-owners' statutory liability. 465 N.W.2d 62 (Minn. 1991). In *Lewellin*, a dog riding in a car distracted the driver, who veered off the road and killed a nine-year-old boy. *Id.* at 63. The district court granted summary judgment to the plaintiff, finding that the dog's owners were strictly liable for the child's death under the statute. *Id.* The supreme court reversed, holding that "[t]hough there may be causation in fact here, this chain of events is too attenuated to constitute legal causation for the radical kind of liability that the statute imposes." *Id.* at 66. The supreme court declined to address the issue of whether actual physical contact between the dog and the injured person is required in every case, but concluded that "[i]t is enough to say here that legal causation for absolute liability under the statute must be direct and immediate, *i.e.*, without intermediate linkage." *Id.* at 65.

Shortly after *Lewellin* was decided, we considered the question that the *Lewellin* court left unanswered: whether the statute imposes liability even when the dog never comes into contact with the injured person. *See Morris v. Weatherly*, 488 N.W.2d 508 (Minn.App.1992), *review denied* (Minn. Oct. 28, 1992). *Morris* was a consolidated appeal. *Id.* at 509. In one case, Morris was bicycling when a dog ran at him, looking as though it would attack. *Id.* Morris quickly dismounted his bike, fell, and injured his shoulder. *Id.* In the other case, Hinman, a mail carrier, "noticed a large dog barking at him from across the street. Suddenly, he saw another dog running toward him.... [T]he dog ran 'past' Hinman, causing him to spin around" and injure his back. *Id.* at 510. We applied *Lewellin* and upheld the juries' determinations that the dogs' owners were liable under the statute. *Id.* at 510–11. We stated that "Morris was injured as he attempted to protect himself from attack" and that "Hinman twisted his back because a large dog ran past or around him.... Although no physical contact occurred, the dog's actions directly and immediately produced Hinman's injury." *Id.* at 510. We concluded that "[t]he actions of the dogs caused the injuries without any attenuated chain of causation." *Id.* at 511.

The final piece of the framework relevant to this appeal was put into place when this court was presented with the issue of whether a dog's presence, at the time of the injury, without more, can impose liability on its owner. In *Mueller v. Theis*, a driver swerved to avoid a dog in the road, but hit the dog and lost control of the car. 512 N.W.2d 907, 909 (Minn.App.1994), *review denied* (Minn. Apr. 28, 1994). The driver was injured when the car went into a ditch and he was thrown from the car.

*Id.* Unlike *Lewellin,* it was the driver of the car who was injured, not a second party; but unlike *Morris,* it was the mere presence of a dog that caused the driver's reaction and not any affirmative behavior by the dog. We concluded that the dog's owner was not strictly liable for the driver's injuries under the statute. *Id.* at 910–11. We held that the dog-owner's liability statute did not apply for two reasons. "First, we cannot characterize the dog's behavior here as the type of 'affirmative' conduct contemplated under the statute." *Id.* at 910. "Second, ... the 'direct and immediate results of the dog's actions,' require both that the dog's conduct be focused on the injured party and that the injury be the direct and immediate result of that focus." *Id.* at 910–11 (quoting *Lewellin,* 465 N.W.2d at 66).

▆ Here, the district court dismissed appellant's cause of action under the dog-owner's liability statute based solely on the second reason stated in *Mueller*—because Bruno's conduct was not "focused on" appellant. Appellant argues that this court misapplied *Lewellin* in deciding *Mueller* by treating the dog's "focus" as an independent element of causation rather than as one of several factors in determining whether a nexus exists between the dog and the victim such that the injury is the direct and immediate result of the animal's actions. Appellant contends that this court's reliance on the dog's focus in *Mueller* produced an erroneous interpretation of section 347.22 because it introduced a subjective element into this strict-liability statute and compels a consideration of where the dog was directing its attention at the time of the attack. We agree.

We hold that Bruno's focus on Tuffy at the time of the attack does not shield respondents from liability for appellant's injuries under the statute. This is not to say that we would have reached a different outcome in *Mueller.* Based on the plain language of the statute, the dog must "attack" or "injure" a person. We agree with the *Mueller* court that this language requires some sort of affirmative conduct by the dog. But we disagree with the language in *Mueller* that arguably added a requirement that the dog must also be "focused" on the injured person in order for the person's injuries to be the direct and immediate result of the dog's conduct. Indeed, we find that the use of the phrase "or injures" negates the requirement that a dog must always be focused on the injured person. An "attack" by a dog necessarily implies that the dog is focused on the injured party. But the legislature clearly contemplated situations in which a dog could otherwise injure a person. As noted by the supreme court in *Lewellin,* "it would appear that the legislature intended the verb 'injures' to cover a dog's affirmative but nonattacking behavior which injures a person who is immediately implicated by such nonhostile behavior." 465 N.W.2d at 64. There is nothing in this interpretation or in the plain language of the statute requiring that the dog be "focused" on the injured person. We therefore conclude that the dog-owner's liability statute may apply when a dog injures a person who is not the focus of the dog's conduct.

▆ But the question remains whether respondents are nevertheless relieved from strict liability because the chain of events between the dog's actions and the injury was too attenuated to impose strict liability on the dog's owner. *See id.* at 66. But no such attenuation is present here: appellant's effort to save Tuffy from Bruno's attack did not result in an injury to a third party, but to appellant himself. We also find this situation to be distinguishable from the one presented in *Mueller.* Although Mueller personally sustained in-

juries due to his effort to avoid hitting the dog with his car, there was no affirmative conduct on the part of the dog. *Mueller*, 512 N.W.2d at 910. Here, there is no dispute that Bruno's attack on Tuffy was an affirmative act that prompted appellant's response, resulting in his injury. We therefore cannot say, as a matter of law, that there is no liability under the statute, and we reverse the district court's grant of summary judgment on this basis.

■ But neither can we say, as a matter of law, that respondents are strictly liable for appellant's injuries. Whether Neil and Dennis may be liable under the statute is ultimately a causation question. *See Lewellin*, 465 N.W.2d at 65 ("Courts have always used the tort doctrine of proximate cause, as distinguished from causation in fact, to implement public policy in establishing the parameters of liability."). While the existence of proximate cause is generally a question of fact, it may be resolved as a matter of law if the evidence would permit reasonable minds to arrive at only one conclusion. *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn.1995). Appellant stated in his deposition that he "lost [his] balance because of the action. How it happened, I don't know. I just—next thing I know, I'm on the ground." Viewing appellant's statement in the light most favorable to him, a jury could reasonably conclude that his broken hip was a direct and immediate result of Bruno's actions. But appellant also stated that it was ten seconds from the moment Bruno bit Tuffy to the time that appellant fell and that during those ten seconds he was kicking Bruno and trying to separate the dogs. It is possible that a jury could conclude that appellant's decision to intervene in a dog fight interrupted the chain of causation such that his injury was not a direct and immediate result of Bruno's actions.

Although "[p]roximate cause is rarely a disputed issue [under the statute] because the statutory phrase 'attacks or injures' contemplates action by a dog that directly and immediately produces injury to the person the dog attacks or injures," we do not find the evidence in this case to be such that reasonable minds could reach only one conclusion. *See Lewellin*, 465 N.W.2d at 65. Because determining proximate cause requires an intensely fact-specific inquiry, it is not readily susceptible to resolution as a matter of law and is typically submitted to the jury. *McCuller v. Workson*, 248 Minn. 44, 47, 78 N.W.2d 340, 342 (1956) ("Since proximate cause is usually a question of fact for the jury, it can seldom be disposed of on a motion for summary judgment. This principle is of long standing." (footnote omitted)). We therefore remand for a determination at trial of whether, under these facts, appellant's injury was the "direct and immediate" result of Bruno's conduct. *See Lewellin*, 465 N.W.2d at 65–66 ("In applying our dog owner's liability statute, public policy and legislative intent are best served by limiting proximate cause to direct and immediate results of the dog's actions, whether hostile or nonhostile.").

## II.

The district court concluded that Dennis is shielded from liability under the statute because as a matter of law he was not harboring Bruno at the time of the attack. The statute states that "[t]he term 'owner' includes any person harboring or keeping a dog." Minn.Stat. § 347.22. The Minnesota Supreme Court has approved the following definitions of the terms "harboring" and "keeping" as used in jury instructions involving the dog-owner's liability statute:

> Harboring or keeping a dog means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring

means to afford lodging, to shelter or to give refuge to a dog. Keeping a dog, as used in the statute before us, implies more than mere harboring of the dog for a limited purpose or time.

*Verrett v. Silver,* 309 Minn. 275, 277, 244 N.W.2d 147, 149 (1976).

In *Verrett,* the dog's owner was temporarily staying at the defendant's house. "Defendant, after the dog had been in the home about a week, left for a vacation and returned home the day after the dog-bite incident." *Id.* at 276–77, 244 N.W.2d at 148. The supreme court held that "whether defendant was harboring or keeping the dog, under the peculiar facts of this case, was an issue of fact which was properly submitted to the jury with instructions that conveyed the meaning of the statute." *Id.* at 278, 244 N.W.2d at 149.

■ The definition of "harboring" in *Verrett* does not require the person to afford the dog shelter or give the dog refuge for more than a limited period of time. Rather, "keeping" a dog requires something more than the "mere harboring of the dog for a limited purpose or time." *Id.* at 277, 244 N.W.2d at 149. Harboring, in contrast, simply means "to afford lodging, to shelter or to give refuge." *Id.* Nevertheless, we cited *Verrett* when we stated, "The Minnesota Supreme Court has defined harboring as giving lodging, shelter, or refuge to a dog for longer than a limited time or for more than a limited purpose." *Tschida v. Berdusco,* 462 N.W.2d 410, 411 (Minn.App.1990), *review denied* (Minn. Dec. 20, 1990). This is not an accurate interpretation of the definitions of keeping and harboring identified in *Verrett.* In addition, the central issue in *Tschida* was not the definition of "harboring." The issue in *Tschida* was whether a person defined as a keeper of a dog under the statute could sue the legal owner of the dog for damages. *Id.* The district court

here nonetheless relied on the above quote from *Tschida* to support its conclusion that Dennis was not harboring Bruno as a matter of law because Neil was staying at Dennis's house for only a limited period of time and for a limited purpose.

■ Because *Tschida* is not on point and because the language relied on by the district court does not accurately reflect the Minnesota Supreme Court's definition of harboring identified in *Verrett,* we reverse the district court's conclusion that as a matter of law Dennis was not harboring Bruno. Because Dennis was arguably affording lodging, providing shelter, or giving refuge to Bruno by allowing Neil to keep Bruno at his home, this question too should be resolved by a jury. *See Verrett,* 309 Minn. at 278, 244 N.W.2d at 149.

**DECISION**

This is neither a case in which appellant was directly attacked by the dog nor a case in which the chain of causation was so attenuated that we can decide, as a matter of law, that there is no liability pursuant to the statute. We therefore conclude that the question of whether appellant's injuries were the direct and immediate result of Bruno's affirmative conduct is appropriately determined by a jury. In addition, because the facts in this case could support a conclusion that Dennis was harboring Bruno when Bruno injured appellant, this issue should also be submitted to a jury.

Because the district court misapplied the law when it granted summary judgment to respondents and dismissed appellant's claims under the dog-owner's liability statute, we reverse and remand for trial.

**Reversed and remanded.**