**Gordon Helmer ANDERSON, Respondent,**

**Maxine Anderson, Plaintiff,**

v.

**Office of Appellate Courts Neil Raymond CHRISTOPHERSON, Respondent,**

**Dennis Christopherson, Appellant.**

No. A11–0191.

Supreme Court of Minnesota.

July 18, 2012.

James S. Ballentine, William R. Sieben, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for respondent Gordon Helmer Anderson.

Chad D. Dobbelaere, Tewksbury & Kerfeld, P.A., Minneapolis, Minnesota, for respondent Neil Raymond Christopherson.

Troy A. Poetz, Victoria A. Lupu, Rajkowski Hansmeier, Ltd., St. Cloud, Minnesota, for appellant Dennis Christopherson.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Dyan J. Ebert, Garin L. Strobl, Quinlivan & Hughes, P.A., St. Cloud, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

PAGE, Justice.

This case requires us to interpret the Minnesota dog owner's liability statute, Minn.Stat. § 347.22 (2010). Respondent Gordon Helmer Anderson (Anderson) was injured during an attack on his dog, Tuffy, by a dog named Bruno, owned by respondent Neil Raymond Christopherson. Anderson, along with his wife, Maxine Anderson, sued Neil Christopherson and his father, appellant Dennis Christopherson, arguing, among other claims, that the Christophersons are strictly liable for Anderson's injuries under Minn.Stat. § 347.22. The district court granted partial summary judgment to the Christophersons, holding that: (1) the Christophersons are not liable under the statute because Bruno's conduct was not focused on Anderson; and (2) Dennis Christopherson is not liable because he was not an "owner" of Bruno, as that term is defined under the statute. The court of appeals reversed, holding that summary judgment was inappropriate because: (1) a dog owner may be held strictly liable for injuries caused by a dog's affirmative conduct regardless of the focus of that conduct; and (2) there are genuine issues of material fact as to whether Anderson's injury was a direct and immediate result of Bruno's conduct and whether Dennis Christopherson was an owner of Bruno under the statute. Dennis Christopherson sought review, and we now affirm.

Gordon Anderson lives in Andover with his dog, a 20–pound miniature schnauzer named Tuffy. On September 27, 2009, at approximately 2 p.m., Anderson was walking with Tuffy on a leash on Kiowa Street NW in Andover. When Anderson walked in front of a house but across the street on the block, a larger dog weighing approximately 50 pounds of unknown breed named Bruno ran out from the house

across the street and bit Tuffy in the stomach. Anderson attempted to separate the dogs and may have kicked Bruno in the process of doing so. While trying to separate the two dogs, Anderson fell and broke his hip. Although the duration of the entire incident was short—less than 20 seconds or so—Bruno did not release Tuffy until someone came out of the house and took control of Bruno.

Neil Christopherson is Bruno's legal owner. Neither Neil nor his father, Dennis Christopherson, were present when Bruno attacked Tuffy. Dennis Christopherson (along with his wife, Kathleen) owns the house, but has not lived in Andover in several years. Both Neil and Dennis Christopherson reside in Sioux Falls, South Dakota. At the time of the incident, Neil Christopherson was visiting the house with his fiancée, Alice, which he does regularly with the permission of his parents. Neil Christopherson had permission from Dennis Christopherson both to visit the house and to bring Bruno, although Dennis Christopherson had only met Bruno once. Dennis Christopherson established rules governing Bruno's ability to stay at the house and was aware that Bruno was staying at the house on September 27, 2009.

In the complaint, Anderson alleges, among other things, that both Christophersons are liable under Minn.Stat. § 347.22 as owners of a dog who injured Anderson [1] and under common-law negligence.[2]

The Christophersons moved for summary judgment, seeking dismissal of Anderson's claims. Anderson moved for partial summary judgment on his claims, arguing: (1) the Christophersons were strictly liable for his injuries under Minn. Stat. § 347.22; and (2) Dennis Christopherson was "harboring" Bruno within the meaning of that term under the statute. After a hearing, the district court granted summary judgment in favor of Dennis Christopherson, dismissing all of the claims against him, and granted partial summary judgment dismissing the statutory claims against Neil Christopherson. The district court denied Anderson's motion in all respects. In granting the Christophersons' motions, the district court held that Bruno's focus on Tuffy precluded liability for the Christophersons under the court of appeals' decision in *Mueller v. Theis*, 512 N.W.2d 907, 910–11 (Minn.App. 1994), *rev. denied* (Minn. Apr. 28, 1994). The district court also held that Dennis Christopherson was not "harboring" Bruno within the meaning of Minn.Stat. § 347.22 because he had not given Bruno lodging, shelter, or refuge for more than a limited duration of time or for more than a limited purpose. As a result of the conclusion that Dennis Christopherson was not harboring Bruno, the district court held that Dennis Christopherson owed no duty of care to Anderson and thus Anderson's claims for common-law negligence also failed. Finally, the district court concluded that because there are genuine issues of material fact with respect to Anderson's common-law negligence claims against Neil Christopherson, the court denied summary judgment for that claim.

---

**1.** Minnesota Statutes § 347.22 provides, in full:

 If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person har-

boring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.

**2.** The complaint included a loss of consortium claim by Maxine Anderson, which was subsequently dismissed without prejudice based on the parties' stipulation.

Anderson appealed the grant of summary judgment on the statutory claims. The court of appeals reversed and remanded for trial, concluding that the district court erred in applying Minn.Stat. § 347.22. *Anderson v. Christopherson,* 802 N.W.2d 832, 834 (Minn.App.2011). We granted the petition for review filed by Dennis Christopherson.

On review of a grant of summary judgment, we consider "(1) whether there are any genuine issues of material fact, and (2) whether the lower courts erred in their application of the law." *J.E.B. v. Danks,* 785 N.W.2d 741, 746 (Minn.2010) (citation omitted) (internal quotation marks omitted). When determining whether genuine issues of material fact exist, we view the evidence in the "light most favorable to the party against whom judgment was granted." *Id.* (citation omitted) (internal quotation marks omitted). Here, the facts are undisputed. The application of a statute to undisputed facts involves a legal conclusion we review de novo. *City of Morris v. Sax Invs., Inc.,* 749 N.W.2d 1, 5 (Minn.2008). We also review issues of statutory interpretation de novo. *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010).

## I.

In order to determine whether the district court properly granted summary judgment to the Christophersons based on Bruno's conduct being too attenuated to confer liability, we are required to construe Minn.Stat. § 347.22, the Minnesota dog owner's liability statute. In its entirety, section 347.22 states:

If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.

We have previously held that the dog owner's liability statute imposes absolute liability on any dog owner whose dog "attacks or injures" another. *Engquist v. Loyas,* 803 N.W.2d 400, 406 (Minn.2011); *Lewellin ex rel. Lewellin v. Huber,* 465 N.W.2d 62, 64 (Minn.1991) ("[L]iability is absolute. It makes no difference that the dog owner may have used reasonable care; negligence is beside the point. Past good behavior of the dog is irrelevant. Neither the common law affirmative defenses nor statutory comparative fault are available to the defendant dog owner. (The owner does, however, have the defenses of provocation and failure of the injured person to conduct himself peaceably while in a lawful place.)").

We discussed the reach of the phrase "attacks or injures" extensively in *Lewellin. See id.* at 64–66. A dog "attacks" when it " 'move[s] against with more or less violent intent, implying aggressiveness in any sense and the initiative in the onset.' " *Id.* at 64 (quoting *Webster's Third New Int'l Dictionary* 140 (1971)). An attack includes dog bites. *Id.* The phrase "injures" in the statute covers "a dog's affirmative but nonattacking behavior which injures a person who is immediately implicated by such nonhostile behavior." *Id.* We gave two non-exclusive examples of nonattacking dog behavior encompassed by the statute: "when a dog exuberantly jumps upon or unintentionally runs into a person and injures that person." *Id.* We went on to explain: "[W]hen a dog *attacks* a person without provocation, there is no attenuated chain of causation between the attack and the injury. The cause of the injury sustained is itself the gist of the statutory wrong. Similarly,

it is intended that there be no attenuated chain of causation when the dog 'injures' a person." *Id.* With respect to causation under the statute, the "phrase 'attacks or injures' contemplates action by a dog that directly and immediately produces injury to the person the dog attacks or injures." *Id.* at 65.

Since *Lewellin,* the court of appeals has attempted to define the contours of the term "injures" and the legal causation standard under Minn.Stat. § 347.22. In *Mueller v. Theis,* the court of appeals created a two-pronged test: "that the dog's conduct be focused on the injured party and that the injury be the direct and immediate result of that focus." 512 N.W.2d at 910–11. Noting that the focus requirement is inconsistent with *Lewellin*'s discussion of proximate cause, the court of appeals in the instant case held that *Lewellin* contained no such "focus" rule. *Anderson,* 802 N.W.2d at 836; *Lewellin,* 465 N.W.2d at 64–65.

 The court of appeals was correct in its holding that *Lewellin* contains no such focus requirement, and we reject the focus requirement articulated by the court of appeals in *Mueller.* The correct question to be answered under *Lewellin* is whether the dog's conduct was the proximate cause of the plaintiff's injuries such that injury was the direct and immediate result. 465 N.W.2d at 65. *Lewellin* requires that the dog's actions constitute an affirmative act that injures someone immediately implicated by the act, and that the act be the proximate cause of the injuries. *Id.* at 64. Generally, under the common law, as we said in *Lubbers v. Anderson,* "proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." 539 N.W.2d 398, 402 (Minn.1995). We have also said that, "for a party's negligence to be the proximate cause of an injury, 'the

act [must be] one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others . . . though he could not have anticipated the particular injury which did happen.' " *Id.* at 401 (quoting *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 113 (Minn.1992)). Under the dog-injury statute, "[p]roximate cause is rarely a disputed issue because the statutory phrase 'attacks or injures' contemplates action by a dog that directly and immediately produces injury to the person the dog attacks or injures." *Lewellin,* 465 N.W.2d at 65. In order to be subject to the statute, "legal causation for absolute liability under the statute must be direct and immediate, i.e., without intermediate linkage." *Id.*

While it is true as we said in *Lewellin* that legal causation is rarely disputed under the dog owner's liability statute, it is also true that on occasion proximate cause will be disputed. *See id.* Proximate cause is ordinarily a question that arises in negligence actions, *see, e.g., Lubbers,* 539 N.W.2d at 401, although it also arises in other contexts such as cases involving absolute liability like the dog owner's liability statute. *See, e.g., Yennie v. Dickey Consumer Prods., Inc.,* No. C1–00–89, 2000 WL 1052175, at *1 (Minn.App. Aug. 1, 2000) (holding that to prevail on a failure-to-warn claim under Minnesota law, a plaintiff must establish that the lack of an adequate warning caused plaintiff's injuries under an ordinary proximate cause analysis); *Marcon v. Kmart Corp.,* 573 N.W.2d 728, 731 (Minn.App.1998) (holding in a strict liability failure-to-warn case that plaintiff must prove that the alleged "defect was the proximate cause of the injury sustained"), *rev. denied* (Minn. Apr. 14, 1998); *J & W Enters., Inc. v. Economy Sales, Inc.,* 486 N.W.2d 179, 181 (Minn. App.1992) (stating that under "any theory of products liability, the plaintiff must show a causal link between the alleged

defect and the injury" (citation omitted) (internal quotation marks omitted)); *see also Rodriguez v. Glock, Inc.*, 28 F.Supp.2d 1064, 1070 (N.D.Ill.1998) ("The labyrinthian concept of proximate cause is the same in negligence and strict liability in tort."); *McCarthy v. Sturm, Ruger & Co.*, 916 F.Supp. 366, 372 (S.D.N.Y.1996) ("To state a claim in either negligence or strict liability a plaintiff must demonstrate that the defendant's breach was the proximate cause of her injuries.").

On the record before us, we conclude that the question of whether Anderson's injuries were a direct and immediate result of Bruno's actions is a question about which reasonable minds may differ and therefore is a question of fact for the jury. On the record here there are at least three reasonable, alternative inferences that can be drawn from the facts: (1) that the attack on Tuffy caused Anderson's fall and injuries; (2) that the attack on Tuffy caused Anderson to intervene to protect Tuffy, resulting in the fall and injuries, with Anderson's intervention being a direct and immediate response; or (3) that the attack on Tuffy caused Anderson to respond but broke the chain of causation. On the facts presented, therefore, a reasonable jury could conclude that Anderson's injury was directly and immediately produced by Bruno's actions and was not so attenuated from Bruno's attack on Tuffy that it compels the conclusion that there is no genuine issue of material fact as to whether Anderson's injuries were proximately caused by that attack. Bruno's attack on Tuffy was an affirmative act that prompted Anderson's response. Anderson was holding Tuffy on a short, non-retractable leash, so it is unclear whether Anderson's intervention into the fight was voluntary. The duration of the attack was short–20 seconds or less. Anderson stated in his deposition that, immediately following the attack, the "next thing [he] knew, [he was] on the ground."

In *Lewellin*, in which we concluded that the chain of events was too attenuated to constitute legal causation, the causation chain had several links: the dog was riding in the backseat of a car and put its head into the driver's face, distracting the driver, who tried to settle the dog and lost control of the car, which went off the road and killed a child at the roadside. *Lewellin*, 465 N.W.2d at 66. Given the three reasonable, alternative inferences from the evidence in the record, summary judgment is inappropriate and it is for the jury to decide these fact questions.

## II.

The remaining issue is whether Dennis Christopherson is an "owner" of Bruno within the meaning of that term in Minn.Stat. § 347.22. In identifying persons responsible for the conduct of a dog that attacks or injures, Minn.Stat. § 347.22 provides: "[T]he owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term 'owner' includes any person harboring or keeping a dog but the owner shall be primarily liable." An "owner" thus includes a harborer and a keeper but the legal, registered owner is primarily liable. Minn.Stat. § 347.22. A person "keeping" a dog is a person who "either with or without the owner's permission undertakes to manage, control or care for it as dog owners in general are accustomed to do." *Verrett v. Silver*, 309 Minn. 275, 277, 244 N.W.2d 147, 149 (1976). In other words, a keeper acts as if he or she is the owner but without legal ownership of a dog. A person "harboring" a dog is a person who affords lodging, shelters, or gives refuge to a dog for a limited purpose or time. *Id.* This is because keeping requires *"more* than the mere harboring" of a dog, or harboring itself would simply be the same as "keeping." *Id.* (emphasis added). However, harboring must involve

"something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises." *Id.*

In *Gilbert v. Christiansen,* we clarified that an apartment manager who did not have the right to exercise control inside a tenant's apartment was not a harborer. 259 N.W.2d 896, 897 (Minn.1977). In quoting the Restatement (Second) of Torts, we noted that neither the "mere right to exclude" nor "[t]he possession of the land on which the animal is kept, even when coupled with permission given to a third person to keep it" were sufficient to convert the landlord of a property into a harborer under the statute. *Id.* at 897 (quoting Restatement (Second) of Torts § 514 cmt. a (1977)). The Restatement comment to section 514 states that "a person harbors a dog or cat by permitting his wife, son or household servant to keep it in the house or on part of his land that is occupied by the family as a group." Restatement (Second) of Torts § 514 cmt. a (1977). We also observed that a defendant who permits a person with a dog to stay at the defendant's house while the defendant was on vacation could be enough to qualify the defendant as "harboring" the dog within the meaning of the statute. *Gilbert,* 259 N.W.2d at 897 n. 1.

Dennis Christopherson argues that the facts in this case establish as a matter of law that his conduct does not rise to the level of harboring Bruno; as a mere owner of the Andover house, his relationship to Bruno is too attenuated to make him a harborer and is more analogous to that of an absentee landlord. *See Gilbert,* 259 N.W.2d at 897. The district court, in ruling in favor of Dennis Christopherson on this issue, relied on a court of appeals opinion that stated in dicta that "[t]he

Minnesota Supreme Court has defined harboring as giving lodging, shelter, or refuge to a dog for longer than a limited time or for more than a limited purpose." *Tschida v. Berdusco,* 462 N.W.2d 410, 411 (Minn.App.1990) (citing *Verrett,* 309 Minn. at 277, 244 N.W.2d at 149), *rev. denied* (Minn. Dec. 20,1990).

■ There is no dispute that Neil Christopherson is the legal, registered owner of Bruno. Thus, Neil Christopherson is primarily liable for Bruno's conduct. *See* Minn.Stat. § 347.22. Additionally, Dennis Christopherson is liable as an "owner" if he harbored Bruno under the statute. Under *Verrett,* a harborer's interactions with a dog may be for a limited period of time or for a limited purpose, so long as they involve more than a stray meal or allowing a dog's casual presence on the premises. *Verrett,* 309 Minn. at 277, 244 N.W.2d at 149.[3] *Gilbert* also requires that a harborer do more than exercise control over land upon which a dog resides.

Viewing the evidence in the light most favorable to Anderson, we conclude that a jury could reasonably find that Dennis Christopherson was affording lodging, providing shelter, or giving refuge to Bruno by allowing his son to keep Bruno at Dennis Christopherson's Andover home. Dennis Christopherson considered Neil welcome at the home in Andover, the Christopherson family was very close and lived next door to each other in Sioux Falls, and the Andover house was Neil's childhood home. In addition, Neil Christopherson had permission to bring Bruno to the Andover house, had discussions with his parents about rules and regulations for Bruno's conduct while in Andover, and was responsible for helping with

---

**3.** The court of appeals' definition of "harborer" in *Tschida* does not correctly state the law as outlined in *Verrett. Compare Verrett,* 309 Minn. at 277, 244 N.W.2d at 149, *with Tschi-* da, 462 N.W.2d at 411. To the extent that the definition of "harboring" in *Tschida* is inconsistent with *Verrett, Tschida* is overruled.

maintenance while staying at the Andover house. Thus, on these facts, a jury could reasonably conclude that Dennis Christopherson harbored Bruno. *See Verrett*, 309 Minn. at 277, 244 N.W.2d at 149; *accord* Restatement (Second) of Torts § 514, cmt. a (1977). On that basis, we conclude that the court of appeals did not err when it remanded the question of whether Dennis Christopherson harbored Bruno to the district court for trial.

We therefore affirm the court of appeals and remand for a jury trial on both the question of whether Anderson's injuries were caused by Bruno's conduct under Minn.Stat. § 347.22, and also the question of whether Dennis Christopherson was an "owner" of Bruno under Minn.Stat. § 347.22.

Affirmed.

GILDEA, Chief Justice (dissenting).

The majority holds that there is a question of fact as to the Christophersons' liability under the dog-bite statute, Minn. Stat. § 347.22 (2010). Because our precedent establishes that the Christophersons are entitled to judgment as a matter of law, I respectfully dissent.

Respondent Gordon Anderson testified that while he was walking his dog Tuffy, respondent Neil Christopherson's dog Bruno charged at Tuffy, "bit him in the chest [and] hung on." Anderson tried to break the two dogs up, fell, and was injured. Specifically, Anderson explained that he lost his balance "because [he was] in the midst of trying to separate [Bruno] from Tuffy." Anderson brought negligence and strict liability claims against respondents. The district court granted the Christophersons' summary judgment motion on the strict liability claims and on Anderson's negligence claim against appellant Dennis Christopherson. The court of appeals reversed. The majority affirms the court of appeals, holding that there is

an issue for trial on Anderson's strict liability claim. I disagree.

The strict liability claim is based on the dog-bite statute, Minn.Stat. § 347.22 (2010). *See Seim v. Garavalia*, 306 N.W.2d 806, 809 (Minn.1981) (noting that with the dog-bite statute, "the legislature has decided to impose liability without fault, or strict liability, upon the owner of the dog"). Under that statute, "[i]f a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured." Minn.Stat. § 347.22.

The dog's owner is liable under the dog-bite statute if the dog "attacks" the plaintiff or if the dog "injures" the plaintiff. *See Lewellin v. Huber*, 465 N.W.2d 62, 64 (Minn.1991) (noting the two different verbs, attacks or injures, in the statute and concluding that "it would appear that the legislature intended the verb 'injures' to cover a dog's affirmative but nonattacking behavior which injures a person"). Anderson conceded at oral argument that the portion of the statute that addresses a dog "attack" is not at issue in this case. The majority's reliance on the fact that Tuffy was on a leash when Bruno bit Tuffy therefore is misplaced. Simply put, Bruno did not attack Anderson; Bruno attacked Tuffy. Anderson recognizes these undisputed facts and he does not argue that respondents are liable to him because Bruno attacked him.

Rather, Anderson contends that respondents are liable under the statute because Bruno "injure[d]" Anderson. We addressed the "injures" portion of the dog-bite statute in *Lewellin*. We held in *Lewellin* that for a dog owner to be liable under the "injures" portion of the statute, the dog must be the "direct and immediate" cause of the plaintiff's injury. *Id.* at

65–66. We described the concept of causation that applied to negligence claims as providing liability for "all injuries naturally and proximately resulting from the negligence." *Id.* at 65. Conversely, we stated that the dog-bite statute "intended that there be no attenuated chain of causation when the dog 'injures' a person." *Id.* at 64. Accordingly, we specifically rejected application of the broader common-law negligence formulation of proximate cause to liability under the dog-bite statute because that "elongate[d] ... causal chain ... would extend absolute liability beyond its intended purpose and reach." *Id.* at 65.

In *Lewellin,* the dog was in the back seat of a car that one of the defendants was driving. The dog distracted the driver, and as the driver was "attempting to get the dog settled," the car struck and killed the plaintiffs' child. *Id.* at 63. The plaintiffs sued the driver and the dog's owner on behalf of their child, who was killed in the accident. Even though the dog's behavior set in motion the events that led to the child's death, we held, as a matter of law, that there was no liability under the statute. *Id.* at 66. We noted that the "dog's conduct was directed at the driver" and that "[t]he driver's subsequent efforts to handle the dog's distracting but nonattacking conduct introduced another link in the chain of causation." *Id.* Despite the probable existence of "causation in fact," we held that the "chain of events is too attenuated to constitute legal causation for the radical kind of liability that the statute imposes." *Id.* In my view, *Lewellin* compels the conclusion that the Christophersons are not liable under the dog-bite statute.

Just as in *Lewellin,* the dog, Bruno, set in motion a chain of events that led to Anderson's injury. But also as in *Lewellin,* Bruno's conduct was not "directed at" Anderson, the injured party. *See id.* Bruno's conduct was directed elsewhere.

It was Anderson's reaction to Bruno's conduct that caused Anderson's injury. As he confirmed at his deposition, Anderson was injured because he decided to intervene in the dog fight and attempted to break the two dogs up. That intervention "introduced another link in the chain of causation" that makes the chain too attenuated to support liability under the statute. *See id.*

I do not disagree with the majority that the factual attenuation in this case is not as remote as the factual attenuation in *Lewellin.* There, it was the driver's reaction to the dog's conduct that caused the driver to lose control of the car and collide with the child. *Id.* at 63. Here, it was Anderson's reaction to the dog's behavior that caused his own injuries. But this is a distinction without a difference for purposes of the rule. The rule of *Lewellin* requires that the dog's conduct be the "direct and immediate" cause of the plaintiff's injuries. *Id.* at 66. Given that something else intervened here between Bruno's conduct and Anderson's injury— Anderson tried to break up the dog fight— Bruno was not the direct and immediate cause of Anderson's injury under *Lewellin.* I therefore would hold that respondents are entitled to judgment as a matter of law.

In reaching the opposite conclusion, the majority has effectively overruled *Lewellin.* Relying on cases that apply the common-law proximate cause standard, the majority finds that there is a question of fact for the jury to resolve in this case as to causation. But we rejected precisely this standard in *Lewellin.* *Id.* at 65. The majority articulates no reason for overruling *Lewellin,* much less the "compelling reason" our jurisprudence requires to support a reversal of precedent. *SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.,* 795 N.W.2d 855,

862 (Minn.2011) (noting that "[w]e are 'extremely reluctant to overrule our precedent . . .' and 'require a compelling reason' to do so." (citation omitted)).

The majority also does not articulate the fact question that the jury will be asked to decide. The majority instead argues that this case was wrongly decided on summary judgment because there are at least two reasonable inferences favorable to Anderson that could be drawn from the undisputed facts. But these inferences do not create an issue for the jury because they are not supported by the record and are inconsistent with our case law.

First, the majority states that a jury could find that "the attack on Tuffy caused Anderson's fall and injuries." This finding would be inconsistent with the "direct and immediate" statutory standard from *Lewellin*, 465 N.W.2d at 66. In addition, this inference is not supported in the record because Anderson conceded that he is not seeking relief under the "attack" portion of the statute. To the contrary, Anderson admitted that he fell as a result of his attempt to intervene.

Second, the majority asserts that a jury could find that "the attack on Tuffy caused Anderson to intervene to protect Tuffy, resulting in the fall and injuries, with Anderson's intervention being a direct and immediate response." But any such finding could not lead to liability under the statute. Under *Lewellin*, a dog owner is liable for injuries directly and immediately resulting from a dog's affirmative action— not the plaintiff's direct and immediate intervening response to a dog's action. 465 N.W.2d at 66. Indeed, the plaintiff's intervention served to "introduce[ ] another link in the chain of causation," making the strict liability statute inapplicable. *Id.* Concluding, as the majority does, that a

dog owner is liable for a plaintiff's injuries under such circumstances makes a dog owner liable for the actions of the plaintiff. Creating liability for a dog owner not only when his dog directly and immediately injures the plaintiff, but also when the plaintiff is injured because the plaintiff decided to respond to the dog's actions, is not contemplated by the statute and is inconsistent with our case law.

In sum, the parties cross-moved for summary judgment, acknowledging that there was no material fact in dispute. The majority even admits that "the facts are undisputed" in this case. The only question is whether the undisputed facts support liability under the dog-bite statute. That inquiry is one of law, and under *Lewellin*, the answer to the legal question is clear. I therefore would reverse the court of appeals.[1]

DIETZEN, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.

---

1. Because I would hold that the Christophersons are entitled to judgment as a matter of law under the dog-bite statute, I would not

reach the alternative issue raised as to whether Dennis Christopherson can be considered Bruno's owner for purposes of the statute.