ANN WALSH BRADLEY, J.
¶ 1. Petitioners, George Kontos and his insurance company, Homestead Mutual Insurance Company, seek review of a published decision of the court of appeals. It affirmed the circuit court's determination that Kontos could be held liable to the plaintiff, Julie Augsburger, for injuries caused by his daughter's dogs.[1]
*390 ¶ 2. Kontos contends that he cannot be held strictly liable for injuries caused by the dogs because he is not an "owner" of the dogs under the statutory definition. According to Kontos, although the statutory definition of "owner" includes a "harborer," he did not harbor his daughter's dogs when he permitted his daughter and her family to live in a house he owned while he resided elsewhere. Kontos asserts that because he lived elsewhere, he did not have the requisite control to be a harborer under the statute.
¶ 3. We conclude that mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02 (2011-12).[2] Rather, the totality of the circumstances determines whether the legal owner of the property has exercised the requisite control over the property to be considered a harborer and thus an owner under the statute.
¶ 4. We determine that Kontos is not an "owner" under the statute.[3] A statutory owner includes one who "owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). It is undisputed that Kontos did not legally own the dogs and did not "keep" them. Additionally, we conclude that he was not a harborer as evidenced by the totality of the circumstances. He neither lived in the same household as the dogs nor exercised control over the *391 property on which the dogs were kept. Accordingly, we reverse the court of appeals.
I
¶ 5. The relevant facts in this case are undisputed. Kontos owned a property in Larsen, Wisconsin on Grandview Road ("the Grandview property"). He purchased the Grandview property for his daughter, Janet Veith, and her family to live in so that she could be near her mother who was having medical difficulties at the time.
¶ 6. Kontos did not reside at the property with the Veiths. General repairs and maintenance were done by Veith's husband. This included partially remodeling the interior of the home. There was no formal lease between Kontos and the Veiths. Kontos was aware that the Veiths were having financial difficulties and he did not expect them to pay rent. At times he gave his daughter money to help with the bills. She dealt with Kontos as her dad and did not think of him as her landlord. In explaining the arrangement, Veith explained that the Grandview property was "[Kontos'] house. We live there." In contrast, her husband did consider Kontos to be their landlord.
¶ 7. At the time Kontos purchased the property he was aware that the Veiths owned horses and two dogs and that the animals would be living with the family. Kontos' deposition testimony reflects that part of the reason he chose the Grandview property was its suitability for the horses. After the Veiths moved in, they rescued another dog named Bailey. Bailey was pregnant and had four puppies. The Veiths kept three of the puppies. Although Kontos was not fond of the dogs, he did not tell his daughter to remove them from *392 the property. The Veiths acknowledged he had the authority to prohibit the dogs from the property, but that he did not exercise that authority. Although Kontos apparently appeared on the property on multiple occasions, the record reveals that it was not frequent.
¶ 8. When he did visit, Kontos would rarely go near the dogs. He never fed the dogs, watered, or bathed them. Further, he did not groom them or take them to the vet. He did not pay for their food, take care of them, or instruct his daughter how to take care of them. He did, however, yell at the dogs a few times to be quiet.
¶ 9. On the date of the incident Veith invited Augsburger to visit her at the Grandview property. When Augsburger arrived, Veith's daughter informed her that Veith was in the barn. As Augsburger made her way to the barn, four dogs ran at her from the house. They attacked her and bit her multiple times.
¶ 10. Augburger filed a complaint against the Veiths, Kontos, and Homestead Mutual Insurance Company. In the complaint Augsburger alleged that Kontos and the Veiths were negligent in keeping and controlling the dogs and were liable for her injuries under Wis. Stat. § 174.02(1), which imposes strict liability on dog owners for injuries caused by their dogs.
¶ 11. Both Kontos and Augsburger filed summary judgment motions addressing the issue of whether Kontos was a statutory owner.[4] Kontos relied on Smaxwell v. Bayard, 2004 WI 101, 274 Wis. 2d 278, 682 N.W.2d 923, which held that under the circumstances a landlord could not be held liable for injuries caused by *393 a tenant's dog. Augsburger relied on Pawlowski v. American Family Ins. Co., 2009 WI 105, 322 Wis. 2d 21, 777 N.W.2d 67, which determined that a landowner was a statutory owner when she harbored a dog by allowing the dog and its legal owner to reside in her residence.
¶ 12. The circuit court determined that the term "harbor" means "to give shelter or refuge to" and concluded that Kontos gave shelter to the Veiths and their dogs. Accordingly, it determined that he was a statutory owner.
¶ 13. Kontos and his insurer filed an interlocutory appeal, asserting that he was not a statutory owner because he did not exercise custody or control over or care for the dogs, and that public policy precluded his liability. The court of appeals affirmed the circuit court, reasoning that Kontos was a harborer under the statute because he was the owner of the home and knowingly afforded lodging and shelter to the dogs. Augsburger v. Homestead Mutual Ins. Co., 2013 WI App 106, ¶¶ 13-14, 350 Wis. 2d 486, 838 N.W.2d 88. It further determined that public policy considerations did not preclude Kontos' liability. Id., ¶ 23.
II
¶ 14. In this case, we are asked to review the court of appeals' decision affirming the circuit court's grant of summary judgment to Augsburger. When we review grants of summary judgment we apply the same methodology as does the court of appeals and the circuit court. Pawlowski, 322 Wis. 2d 21, ¶ 15. Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).
*394 ¶ 15. Here, the relevant facts are not in dispute. At issue is whether Kontos can be held liable as an "owner" under Wis. Stat. § 174.02. Statutory interpretation is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Pawlowski, 322 Wis. 2d 21, ¶ 16.
¶ 16. We look first to the statutory language at issue. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." Id., ¶ 46. Prior caselaw can aid in this inquiry as it "may illumine how we have previously interpreted or applied the statutory language." Belding v. Demoulin, 2014 WI 8, ¶ 16, 352 Wis. 2d 359, 843 N.W.2d 373.
¶ 17. Our interpretation of a statute is guided also by the canons of statutory construction. "When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings." Pawlowski, 322 Wis. 2d 21, ¶ 22. Further, "[statutes in derogation of the common law are strictly construed." Fuchsgruber v. Custom Accessories, Inc., 628 N.W.2d 833, ¶ 26, 244 Wis. 2d 758, 628 N.W.2d 833; see also NBZ, Inc. v. Pilarski, 185 Wis. 2d 827, 836, 520 N.W.2d 93 (Ct. App. 1994) ("A statute in derogation of the common law must be strictly construed so as to have minimal effect on the common law rule.").
*395 III
¶ 18. We begin with the language of the statutes. Wisconsin Stat. § 174.02, often referred to as the dog bite statute, imposes strict liability on dog owners for injuries caused by their dogs. It states: "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." Wis. Stat. § 174.02(a).[5]
¶ 19. A neighboring statute contains a definition of the term "owner." Wisconsin Stat. § 174.001 provides: "As used in this chapter, unless the context indicates otherwise: . . .'Owner' includes any person who owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). The parties agree that Kontos was not the legal owner of the dogs and did not keep them, but dispute whether he harbored them.
¶ 20. The term "harbor" is not defined in the statute. Accordingly, the plain language of the statutory scheme fails to provide clear guidance on how the term "harbor" should be interpreted in the present situation. Wisconsin caselaw, however, has addressed the definition of the term "harbor" and we find guidance from those cases.
¶ 21. A general definition of the term "harborer" is provided in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992).[6] There, *396 the court defined the term by contrasting it with the term "keeper." It explained "[c]ourts generally define 'keeping' as exercising some measure of care, custody or control over the dog, while 'harboring' is often defined as sheltering or giving refuge to a dog. Thus, 'harboring' apparently lacks the proprietary aspect of keeping.'" Id. Further expounding on the meaning of "harboring," the court stated that:" '[h]arboring a dog' means something more than a meal of mercy to a stray dog or the casual presence of a dog on someone's premises. Harboring means to afford lodging, to shelter or to give refuge to a dog." Id. at 151. Thus, it determined that a mother who permitted her adult son to bring his dog to a family gathering was not a "harborer." Id.
¶ 22. Whether an individual fits within this definition of "harborer" depends upon "the peculiar facts and circumstances of each individual case." Pawlowski, 322 Wis. 2d 21, ¶ 20; Hagenau v. Millard, 182 Wis. 544, 547, 195 N.W. 718 (1924). In other words, the determination is based on a totality of the circumstances. Cases undergoing such an analysis suggest that whether the landowner lives on the premise with the dog is an important factor in making the determination.
¶ 23. For example, this court recently construed the term "harbor" in Pawlowski, 322 Wis. 2d 21. In that case, a homeowner allowed an acquaintance and his dogs to live with her. Id., ¶ 9. During that time, one of the dogs attacked the plaintiff. Id., ¶ 11. Relying on the definition of "harborer" in Pattermann, the court determined that the homeowner was a statutory owner under Wis. Stat. § 174.02. Id., ¶ 26 (quoting Patter *397 mann, 173 Wis. 2d at 149 n.4). It explained that it reached an outcome different from that in Pattermann due to the different facts. Specifically, it observed that in Pattermann "the dog did not live in the house, and the homeowner had not 'fed or cared for the dog in any way.'" Id., ¶ 28.
¶ 24. The Pawlowski court also acknowledged caselaw holding generally that landlords are not liable for the actions of their tenants' dogs. Id., ¶ 52 (citing Smaxwell, 274 Wis. 2d 278; Gonzales v. Wilkinson, 68 Wis. 2d 154, 227 N.W.2d 907 (1975); Malone v. Fons, 217 Wis. 2d 746, 580 N.W2d 697 (Ct. App. 1998)). It noted that in traditional landlord-tenant cases, "the landlord had limited control over the tenant's premises." Id. It explained that the circumstances it was considering were different because the dog and its owner lived in a bedroom in the landowner's home. Id. Thus, the dog owner was "more akin to a houseguest than a tenant," and so the landlord-tenant caselaw did not apply. Id.
¶ 25. Other cases construing "owner" in the context of liability for dog bites likewise suggest that a landowner who lives in a separate residence from a dog is not typically considered a statutory owner of that dog. In Hagenau, 182 Wis. 544, the court considered a situation where Ritter, who was the defendant's sister-in-law and employee, rented two rooms in the defendant's building in which Ritter and her dogs lived. The court stated that: "the word 'harbor' in its meaning signifies protection; and it has been held that the keeper is one who treats the dog as living at his house and who undertakes to control his actions.. . ." Id. at 547.
¶ 26. The Hagenau court stressed the importance of where the landowner was living. It noted that the defendant "occupied separate and distinct portions of *398 the premises and maintained a separate and distinct home or place of abode." The court further determined that "[t]here is no evidence, however, in the case which tends to indicate that [defendants] could be deemed to be harborers of the dogs; that they furnished them with shelter, protection, or food, or that they exercised control over the dogs." Id. at 548. Accordingly, it concluded that the defendants were not liable as owners. Id. at 549.
¶ 27. The court addressed the alternative scenario of a defendant who permitted his adult daughter and her dog to live with him in Koetting v. Conroy, 223 Wis. 550, 270 N.W. 625 (1937). The court observed that the dog lived "in the dwelling house of [defendant], with his knowledge and permission, and fed from the remnants of his table." Id. at 552. Additionally, it stated that "[w]here a child is the owner of a dog kept on the premises of the father, who supplies it with food and furnishes it with shelter upon his premises, the father is deemed to be a keeper of the dog." Id. at 552 (quoting Hagenau, 182 Wis. at 547). Accordingly, the court determined that the defendant was a keeper under the statute.
¶ 28. Although Koetting discussed "owner" in terms of "keeper" and not "harborer," the opinion seems to use the words interchangeably. See id. at 555 ("One purpose of the statute is to protect domestic animals from injury by whomsoever the dogs are kept or harbored."); id. at 552 (noting that in order to make a case against a defendant under Wis. Stat. § 174.02, a plaintiff must show facts "which made him the keeper of the dog").
¶ 29. Further support for the importance of where a landowner resides can be found in Malone v. Fons, 217 Wis. 2d 746, 580 N.W.2d 697 (Ct. App. 1998). *399 In that case the court considered whether a landlord was a harborer of a dog owned and kept by a tenant. The court concluded that "a landlord does not become a harborer of a tenant's dog merely by permitting his or her tenant to keep the dog." Id. at 766.
¶ 30. Augsburger argues that landlord-tenant cases, such as Malone, are not applicable because there was no formal rental agreement between Kontos and the Veiths. In response, Kontos asserts that the Veiths were tenants-at-will. We need not determine whether there was a landlord-tenant relationship in this case. As indicated by Pawlowski, 322 Wis. 2d 21, ¶ 52, our focus is not on the official relationship between the dog owner and the landowner; rather our focus is on the amount of control the landowner exerts over the premises on which the dog is kept — whether the dog's legal owner is more akin to a houseguest or a tenant.
¶ 31. The rule we glean from the cases discussed is supported by the Restatement (Second) of Torts, § 514 cmt. a (1977). The Restatement stresses that land ownership by itself is not enough to qualify a landowner as a harborer: "the possession of the land on which the animal is kept, even when coupled with permission given to the third person to keep it, is not enough to make the possessor of the land liable as a harborer of the animal." The court of appeals has previously cited this language with approval, Malone, 217 Wis. 2d at 766 n.7, and we likewise find it persuasive.
¶ 32. The Restatement further emphasizes the importance of considering whether the landowner is residing on the premises with the dog. It explains that an individual "harbors [an animal] by making it part of his household." Id. It states that: "[t]his he may do by permitting a member of his household ... to keep the *400 animal either in the house or on the premises that are occupied as the home of the family group of which he is the head." Id.
¶ 33. The fact scenario in this case (although admittedly more detailed) matches an example provided in the Restatement (Second) of Torts § 514. In explaining who qualifies as a harborer, the Restatement observed that "a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son, although he has the power to prohibit the dog from being kept and fails to exercise the power." Id. Similarly here, Kontos' ownership of the land on which his daughter resides in a separate residence is insufficient to qualify Kontos as a harborer even though he possessed the power to exclude the dogs but failed to exercise that power.[7]
¶ 34. Cases from a number of other jurisdictions likewise support the view that whether the landowner resides on the premises with the dog is relevant to determining whether the landowner is a harborer. See, e.g., Carr v. Vannoster, 281 P.3d 1136, 1144 (Kan. Ct. App. 2012) ("[Defendant] was not a harborer of [his son's] dog . . .; [Son] was not a member of [defendant's] household. [Son] maintained his own household on the premises where he lived with his wife. The home where he kept his dog was not the home or premises occupied as the home of the family group of which [defendant *401 was] the head."); Barnett v. Rowlette, 879 S.W.2d 543, 544 (Mo. Ct. App. 1994) ("the fact that Kenneth was in possession of [the dog] and lived in a separate residence from [the landowner] prevents the conclusion from being drawn that [the landowner] harbored [the dog].").
¶ 35. The court of appeals in this case relied on another out-of-state case, Anderson v. Christopherson, 816 N.W.2d 626 (Minn. 2012), to reach its conclusion that as the owner of the land, Kontos was a statutory owner of the dogs. Augsburger, 350 Wis. 2d 486, ¶ 15. In Anderson, the defendant had two houses. He permitted his son who owned a dog to visit his Minnesota house with his fiancée. 816 N.W.2d at 629. The defendant specifically gave permission for his son to bring the dog, but established rules for the dog's presence. Id. The defendant lived in another state and was not present when his son visited. Id. The Minnesota Supreme Court determined that the defendant could be held liable as a harborer of the dog, and remanded the case for a jury determination on the issue. Id. at 633.
¶ 36. Anderson does not convince us that mere ownership of the property on which a dog is kept is sufficient to qualify the landowner as a harborer. It did not hold that a defendant necessarily is a harborer if he owns the property on which the dog resides. Indeed, it stated that Minnesota caselaw "requires that a harborer do more than exercise control over land upon which the dog resides." Id. Further, Anderson quoted the Restatement (Second) of Torts § 514 with approval. Id. ("neither the 'mere right to exclude' nor '[t]he possession of the land on which the animal is kept, even coupled with permission given to a third person to keep it' were sufficient to convert the landlord of a property into a harborer.").
*402 ¶ 37. Insofar as Anderson considered the issue of a defendant's ownership of the property, it merely held that property ownership was a factor to consider in answering the question of whether a landowner is a harborer and remanded the case for a jury to decide whether under the facts of the case the defendant was an owner. Id. at 633-34. Thus, Anderson does not militate toward finding a landowner to be per se an owner of a dog residing on his land.
¶ 38. A narrow interpretation of the word "harbor" is consistent with the canons of statutory construction. Augsburger raised the concern that this court would include control in the definition of harbor, conflating the word "harbor" with the word "keep" in Wis. Stat. § 174.001, which would conflict with the canon of construction that different words be given different meanings. See Pawlowski, 322 Wis. 2d 21, ¶ 22 ("[w]hen the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). Whereas Pawlowski defines "keeping" as "exercising some measure of care, custody or control over the dog," id., ¶ 26, Augsburger maintains that the court should not put any requirement for control into the definition of "harborer."
¶ 39. Our interpretation of the dog bite statute does not overlook the canon of construction that Augsburger cites. We acknowledge that in interpreting "harborer" in a manner that considers where the landowner resides necessarily takes into consideration some aspect of control. An off-premises landowner generally has less control over the property than an on-premises landowner. However, the control that is implicated in our interpretation of "harborer" is not the same as the control an individual must exercise to be a "keeper." The *403 control considered in the analysis of "keeper" is control over the dog, not control over the property. Pawlowski, 322 Wis. 2d 21, ¶ 26. Thus, our interpretation of the dog bite statute which takes into account where the landowner resides is in keeping with the canon of construction that different words in a statute have different meanings.
¶ 40. Additional support for our interpretation comes from the canon of construction providing that legislation in derogation of the common law should be strictly construed so as to have minimal effect on the common law rule. Fuchsgruber, 244 Wis. 2d 758, ¶ 25; NBZ, Inc., 185 Wis. 2d at 836. The dog bite statute is in derogation of the common law. Malone, 217 Wis. 2d at 763; Pattermann, 173 Wis. 2d at 150. Under the common law rule, an owner needed to have notice that a dog was dangerous in order to be held liable for an injury caused by the dog. Smaxwell, 274 Wis. 2d 278, ¶ 42; Nelson v. Hansen, 10 Wis. 2d 107, 118, 102 N.W.2d 251 (1960). In 1981, the legislature amended Wis. Stat. § 174.02 to impose strict liability on dog owners. § 10, ch. 285, Laws of 1981 ("Liability for injury, (a) Without notice. The owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property.").
¶ 41. As the strict liability imposed by Wis. Stat. § 174.02 on owners for injuries caused by dogs is in derogation of the common law, the statute should be interpreted narrowly. Malone, 217 Wis. 2d at 763; Pattermann, 173 Wis. 2d at 150. A conclusion that "harboring" requires more than mere ownership of the land on which a dog resides is consistent with a narrow reading of the statute. A contrary interpretation would extend *404 the strict liability in the statute, being in further derogation of the common law rule requiring negligence or fault.
¶ 42. In sum, the determination of ownership under the dog bite statute is based on the totality of the circumstances. Our review of the statutes, caselaw, and the canons of statutory construction convinces us that mere ownership of the property on which a dog resides is insufficient to establish that an individual is a harborer.
IV
¶ 43. Having determined that ownership of the property on which a dog resides is not sufficient to establish that the individual is an owner under the dog bite statute, we turn to the facts of this case.
¶ 44. First, we consider the degree of control that Kontos had over the Grandview property to determine whether the Veiths were more akin to houseguests or tenants. There are limited facts to support the conclusion that the Veiths were houseguests. In essence, they are limited to the fact that there was no formal rental agreement between Kontos and the Veiths, and that Kontos did not expect the Veiths to pay rent due to their financial circumstances.
¶ 45. On the other hand, multiple facts suggest that the Veiths were more akin to tenants. Kontos did not live at the property with the Veiths, but maintained a separate residence approximately seven miles away. The record does not reflect that he prescribed particular rules for the Veiths to follow. Mr. Veith performed repairs and general maintenance on the property and partially remodeled the interior of the home. Further, *405 although Kontos apparently appeared on the property on multiple occasions, the record reveals that it was not frequent.
¶ 46. Overall, the record demonstrates that Kontos did not exercise control over the Grandview property. By all indications, Kontos provided the property for his daughter with the intention that she treat it as her home. This was not the situation at issue in Pawlowski where the dog's legal owner lived in the same residence with the property owner in a relationship akin to a houseguest. Rather, the Yeiths lived on the Grandview property, maintaining it as if it were their own residence.
¶ 47. Considering the totality of the circumstances detailed above, we conclude that Kontos was not a statutory owner of the dogs such that he could be held liable under Wis. Stat. § 174.02. It is undisputed that Kontos did not legally own the dogs and did not exercise the requisite care, custody or control of the dogs to qualify as a keeper. Further, he was not a harborer of the dogs. Although Kontos provided shelter for his daughter and family by buying the house for them to live in, he exercised no control over that property and maintained a separate residence. Ultimately, it was his daughter who provided shelter to the dogs.
V
¶ 48. We conclude that mere ownership of the property on which a dog resides is not sufficient to establish that an individual is an owner of a dog under Wis. Stat. § 174.02. Rather, the totality of the circumstances determines whether the legal owner of the *406 property has exercised the requisite control over the property to be considered a harborer and thus an owner under the statute.
¶ 49. We determine that Kontos is not an "owner" under the statute. A statutory owner includes one who "owns, harbors or keeps a dog." Wis. Stat. § 174.001(5). It is undisputed that Kontos did not legally own the dogs and did not "keep" them. Additionally, we conclude that he was not a harborer as evidenced by the totality of the circumstances. He neither lived in the same household as the dogs nor exercised control over the property on which the dogs were kept. Accordingly, we reverse the court of appeals.
By the Court. — The decision of the court of appeals is reversed.

 Augsburger v. Homestead Mutual Ins. Co., 2013 WI App *390 106, 350 Wis. 2d 486, 838 N.W.2d 88 (affirming judgment of the circuit court for Winnebago County, Gary R. Sharpe, Judge).

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Because this issue is dispositive, we need not reach the alternative argument raised by Kontos — that even if he is an owner, public policy weighs against holding him liable.

 Homestead Mutual Insurance Company also filed a summary judgment motion seeking a determination that the Veiths were not "insureds" under the policy it provided to Kontos. The circuit court granted that motion.

 Subsection (b) of the statute provides: "After notice. Subject to s. 895.045 and except as provided in s. 895.57 (4), the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property." Wis. Stat. § 174.02(b).

 The comment in Pattermann v. Pattermann, 173 Wis. 2d 143, 149 n.4, 496 N.W.2d 613 (Ct. App. 1992), that a landowner could be liable under a common law negligence theory for *396 injuries caused by a known dangerous dog allowed on her premises was abrogated in Smaxwell v. Bayard, 2004 WI 101, ¶ 42 n.8, 274 Wis. 2d 278, 306, 682 N.W.2d 923.

 The dissent criticizes the use of the Restatement to support our analysis. Dissent ¶¶ 93-95. It maintains that both section 514 and 518 of the Restatement differ from the strict liability scheme currently in place in Wisconsin for domestic dog bites. We agree and accordingly apply neither. We do, however, cite to section 514 as an analogous strict liability scheme that discusses what constitutes a "harborer."