COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP332**

Cir. Ct. No. **2023CV32**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

CHERYL A. RADTKE,

    PETITIONER-RESPONDENT,

  V.

THE LABOR AND INDUSTRY REVIEW COMMISSION,

    RESPONDENT-APPELLANT,

VAPORTEK, INC.,

    RESPONDENT-CO-APPELLANT.

APPEAL from an order of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Reversed.*

Before Neubauer, Grogan and Lazar, JJ.

¶1      NEUBAUER, J.   The Labor and Industry Review Commission (the "Commission") and Vaportek, Inc. appeal from an order granting Cheryl Radtke's petition for review and reversing the Commission's decision that there was no probable cause to believe that Vaportek retaliated against her by terminating her employment in violation of the Wisconsin Fair Employment Act (the "Act").   The appeal raises two issues for our review:  (1) did the Commission err in concluding that there was no probable cause to believe that Radtke "attempt[ed] to enforce [a] right" under WIS. STAT. § 111.322(2m)(a) (2021-22)[1] when she asked Vaportek to compensate her for unpaid overtime work; and (2) is there substantial evidence in the record to support the Commission's ultimate factual finding that Vaportek did not believe that Radtke might file a wage complaint for the unpaid overtime at the time it terminated her employment?

¶2      We agree with the Commission's arguments on both issues.  As to the first, we conclude that an employee does not "attempt[] to enforce [a] right" under WIS. STAT. § 111.322(2m)(a) merely by asking an employer to compensate the employee for unpaid overtime.  In addition, we agree with the Commission that substantial evidence exists in the record to support its finding that Vaportek did not believe Radtke might file a wage complaint when it fired her.  In light of these conclusions, we reverse the circuit court's order and reinstate the Commission's decision concluding that Radtke failed to establish probable cause to believe that Vaportek violated the Act.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## BACKGROUND

¶3     The following facts are drawn from findings of fact that were made by an administrative law judge and adopted by the Commission. Radtke began working at Vaportek, a manufacturer of air cleaners and other products, in 1982. In the mid-1990s, Vaportek promoted Radtke to a supervisory lead position. In that role, one of Radtke's responsibilities was to set up machinery for other employees to use prior to the start of a shift. For many years, Radtke reported to work fifteen to thirty minutes before the start of the shift each day to set up the machinery. This pre-shift prep work meant that Radtke often worked more than forty hours per week. However, for many years she was not paid overtime.

¶4     In May 2015, a new plant manager began working at Vaportek. Radtke and another supervisory lead employee, Bambi Boettcher, reported to the plant manager, who in turn reported to the company's general manager. Soon after the plant manager began work, he discovered that Radtke and other employees had not been paid overtime and changed Vaportek's payroll system to ensure they would receive it starting in June 2015. The plant manager left Vaportek in September 2015, at which time Vaportek's general manager, Elizabeth Schneider, temporarily assumed that role.

¶5     Soon thereafter, Schneider began receiving complaints from Vaportek employees about Radtke. The complaints asserted that Radtke had been unduly harsh and unfair in her treatment of employees and had exhibited favoritism towards certain employees. Schneider examined some of Radtke's past performance reviews, several of which contained comments about her interpersonal skills that echoed the employee complaints. Schneider also sought guidance from an external human resources consultant company, which

recommended sending confidential surveys to Vaportek employees who were supervised by Radtke and Boettcher.

¶6 Schneider decided to send out the surveys, which were reviewed by the new plant manager, Paul Giersch, who was hired in December 2015. In a summary of the results Giersch provided to Schneider, Giersch noted that half of the respondents had reported concerns that Radtke did not treat them fairly and more than half believed that she exhibited favoritism. Giersch also included in the summary comments from some of the respondents that generally portrayed Radtke's supervisory and interpersonal skills in a negative light.

¶7 Based on the survey results, Schneider concluded that Radtke's performance was not satisfactory and decided to reduce her supervisory responsibilities. She and Giersch met with Radtke on Friday, January 8, 2016. They gave her Giersch's summary, reviewed the survey results with her, and informed her that, in light of the negative feedback regarding her job performance, she would no longer be responsible for scheduling and job rotations. Radtke asked to see the actual surveys and Schneider told her that she would have to look into whether they could be provided to her. Schneider also told Radtke that she would provide more information regarding her restructured job duties the following Monday, January 11.

¶8 Schneider and Giersch met with Radtke and Boettcher on Monday morning. During the meeting, Schneider informed Radtke that her job title going forward would be "Production Assistant," that she would no longer be responsible for job scheduling or rotation so as to minimize her interaction with other staff, and that she would report to Boettcher. Schneider also told Radtke that her hourly rate of pay would be reduced "to reflect [her] modified duties and

responsibilities." Radtke was shocked to learn that she would henceforward be reporting to Boettcher, her former peer. She repeated her request to see the survey forms and said that "if [Vaportek] was going to reduce her pay, then it should make up for that by compensating her for all of her unpaid overtime going back all the way to when she started working at Vaportek more than 30 years earlier." This marked the first occasion on which Radtke had raised the issue of unpaid overtime with Vaportek management.

¶9 After the meeting, Schneider again contacted the human resources consultant for advice on how to respond to Radtke's requests. The consultant recommended that Vaportek not provide the surveys to her because the employees had been assured they would be kept confidential. The consultant also advised that Vaportek could reduce Radtke's pay in connection with the adjustment of her job duties and that Vaportek was required to compensate her for unpaid overtime, but only going back two years. Schneider then held a second meeting with Radtke, which Giersch also attended. Consistent with the advice she had received, Schneider declined to turn over the surveys and informed Radtke that the company could reduce her wages because she was an at-will employee. Schneider also told Radtke that Vaportek was only required to compensate her for unpaid overtime going back two years and that it would do so once she had examined Radtke's time cards for that period and determined the amount she was owed.

¶10 Schneider then told Radtke that Vaportek "was no longer in need of her services, or words to that effect, which Radtke understood to mean that her employment with Vaportek was being terminated." She left the meeting, collected

her belongings, and left the facility.[2]  Schneider subsequently determined the amount of overtime that Radtke was owed and added that amount to her final paycheck.  At no time on or before January 11, 2016, did Radtke indicate that she intended to file a complaint with any governmental entity regarding the unpaid overtime.

## PROCEDURAL HISTORY

¶11  In April 2016, Radtke filed a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development alleging that Vaportek owed her additional overtime pay.  Radtke later withdrew the complaint, and in June 2016, she filed a second complaint with the Equal Rights Division alleging that Vaportek had terminated her because it had believed she was going to file a wage complaint.  On November 1, 2016, the Equal Rights Division issued an initial determination that no probable cause existed to support the allegation of retaliatory termination.

¶12  Radtke appealed the initial determination and a hearing was held before an administrative law judge (ALJ) in June 2018.  In November 2019, the ALJ issued a written decision upholding the division's determination of no probable cause and its dismissal of Radtke's complaint.  Radtke petitioned the Commission to review the ALJ's decision.  In December 2022, the Commission issued a split decision affirming the ALJ's decision and dismissing Radtke's complaint.

---

[2] In proceedings below, Radtke and Vaportek disagreed whether she quit or was terminated.  The administrative law judge who held a hearing on Radtke's complaint found that Vaportek terminated Radtke's appointment.  Neither party challenges that finding on appeal.

¶13     After adopting the ALJ's factual findings, the Commission majority addressed Radtke's allegation of retaliatory termination with respect to two of the Act's provisions.[3]  First, WIS. STAT. § 111.322(2m)(a) prohibits an employer from discharging an employee because he or she "files a complaint or attempts to enforce any right under" certain statutes, including as relevant here, WIS. STAT. § 103.02 (pertaining to overtime pay) and WIS. STAT. § 109.03 (pertaining to wage

---

[3]  The applicable statute, WIS. STAT. § 111.322, states in relevant part as follows:

> **111.322 Discriminatory actions prohibited.**     Subject to ss. 111.33 to 111.365, it is an act of employment discrimination to do any of the following:
>
> ....
>
> **(2m)** To discharge or otherwise discriminate against any individual because of any of the following:
>
> (a) The individual files a complaint or attempts to enforce any right under s. 103.02, 103.10, 103.11, 103.13, 103.28, 103.32, 103.34, 103.455, 104.12, 109.03, 109.07, 109.075, 146.997, or 995.55, or ss. 101.58 to 101.599 or 103.64 to 103.82.
>
> (b) The individual testifies or assists in any action or proceeding held under or to enforce any right under s. 103.02, 103.10, 103.11, 103.13, 103.28, 103.32, 103.34, 103.455, 104.12, 109.03, 109.07, 109.075, 146.997, or 995.55, or ss. 101.58 to 101.599 or 103.64 to 103.82
>
> (bm)  The individual files a complaint or attempts to enforce a right under s. 49.197(6)(d) or 49.845(4)(d) or testifies or assists in any action or proceeding under s. 49.197(6)(d) or 49.845(4)(d).
>
> (d) The individual's employer believes that the individual engaged or may engage in any activity described in pars. (a) to (bm).
>
> **(3)** To discharge or otherwise discriminate against any individual because he or she has opposed any discriminatory practice under this subchapter or because he or she has made a complaint, testified or assisted in any proceeding under this subchapter.

claims). The Commission determined that Radtke had not shown probable cause to believe that her termination violated this provision. It noted that Radtke did not file a complaint with the Equal Rights Division until *after* Vaportek terminated her. And it rejected Radtke's argument that she "attempt[ed] to enforce [a] right" when she asked to be compensated for unpaid overtime on January 11, 2016, citing its interpretation of that statutory language as requiring "resort to a governmental agency."

¶14 The second provision the Commission examined, WIS. STAT. § 111.322(2m)(d), prohibits an employer from terminating an employee because it believes that the employee "engaged or may engage in any activity described in pars. (a) to (bm)," which as relevant here, means filing a wage complaint. The Commission majority "f[ound] no evidence in the record to support" an argument that Vaportek had violated this provision.[4] In addition to the above findings of fact, the Commission noted that "[Vaportek]'s witnesses testified that they did not believe [Radtke] was planning to file a wage claim[.]" The Commission also adopted the ALJ's "[u]ltimate [f]inding[] of [f]act" that "Schneider did not believe that Radtke had filed" such a complaint, or might do so in the future, when Vaportek terminated her employment.

¶15 Radtke then commenced this action by filing a petition for review under WIS. STAT. § 227.52 seeking reversal of the Commission's decision. After briefing, the circuit court issued an oral ruling granting Radtke's petition, reversing the Commission's decision, and returning the case to the Department for

---

[4] The dissenting commissioner disagreed, concluding that Radtke had demonstrated probable cause to believe Vaportek violated WIS. STAT. § 111.322(2m)(d).

a probable cause hearing.[5]  The court concluded that the Commission's finding that Vaportek did not believe that Radtke would pursue an overtime pay claim when it terminated her employment was not supported by substantial evidence. The Commission and Vaportek appeal.

## STANDARD OF REVIEW

¶16    The Commission's decision is subject to judicial review under WIS. STAT. ch. 227.  *See* WIS. STAT. § 111.395.  We review the Commission's decision rather than that of the circuit court.  *Operton v. LIRC*, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426.  Under WIS. STAT. § 227.57, we are to affirm the Commission's decision unless Radtke establishes grounds for setting it aside or modifying it, or for remanding this case to the Commission for further proceedings.  *See* WIS. STAT. § 227.57(2), (5), (6), (8); *Wingra Redi-Mix Inc. v. LIRC*, 2023 WI App 34, ¶40, 408 Wis. 2d 563, 993 N.W.2d 715, *review denied*, 2024 WI 33, 9 N.W.3d 274.

¶17    Our review of the Commission's findings of fact is limited.  "If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact."  WIS. STAT. § 227.57(6).  We will set aside or remand a matter to the Commission based on a factual deficiency only if the Commission's "action depends on any finding of fact that is not supported by substantial evidence in the record."  *Id.*    Substantial

---

[5]  The Honorable Robert F. Dehring, Jr. issued the oral ruling.  The Honorable William F. Hue entered the order granting Radtke's petition and returning the case to the Department for further proceedings.

evidence is not the same as a preponderance of the evidence; it is a lesser evidentiary threshold. *See Bernhardt v. LIRC*, 207 Wis. 2d 292, 298, 558 N.W.2d 874 (Ct. App. 1996). A factual finding is supported by substantial evidence if, "after considering all the evidence of record, reasonable minds could arrive at the conclusion reached by the trier of fact." *Wisconsin Bell, Inc. v. LIRC*, 2018 WI 76, ¶30, 382 Wis. 2d 624, 914 N.W.2d 1 (citation omitted). Thus, the Commission's findings may be set aside *only* when a reasonable factfinder *could not* have reached the findings from all the evidence that was before it, including the available inferences from that evidence. *See Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166.

¶18 In contrast, we review the Commission's interpretation and application of statutory language de novo. *See* WIS. STAT. § 227.57(11); *Wisconsin Bell*, 382 Wis. 2d 624, ¶29. We must "set aside or modify" the Commission's decision if we conclude that it rests upon an erroneous interpretation of law "and a correct interpretation compels a particular action, or [we] shall remand the case to the [Commission] for further action under a correct interpretation of the provision of law." *See* § 227.57(5). Though we no longer defer to agency interpretations of law, *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶3, 382 Wis. 2d 496, 914 N.W.2d 21, we accord "due weight [to] the experience, technical competence, and specialized knowledge of the [Commission]" in considering its arguments. *See* § 227.57(10); *Tetra Tech*, 382 Wis. 2d 496, ¶3.

## DISCUSSION

### I. Radtke's Request to be Paid Overtime was not an "[A]ttempt[] to Enforce [a] Right" Under WIS. STAT. § 111.322(2m)(a).

¶19    Radtke first challenges the Commission's determination that she did not show probable cause to believe that Vaportek terminated her employment in violation of WIS. STAT. § 111.322(2m)(a).  "Probable cause," as applied in the context of the Act, "means a reasonable ground for belief, supported by facts and circumstances strong enough in themselves to warrant a prudent person to believe, that a violation of the [A]ct probably has been or is being committed."  WIS. ADMIN. CODE § DWD 218.02(8) (Nov. 2024); *see also* **Boldt v. LIRC**, 173 Wis. 2d 469, 474, 496 N.W.2d 676 (Ct. App. 1992).

¶20    As noted above, WIS. STAT. § 111.322(2m)(a) prohibits an employer from retaliating against an employee because he or she "files a complaint or attempts to enforce" certain employment-related rights.  In this case, it is undisputed that Radtke did not file a complaint concerning unpaid overtime until after Vaportek terminated her employment.  And the Commission concluded that Radtke's statement at the January 11, 2016 morning meeting that Vaportek should compensate her for unpaid overtime did not constitute an "attempt to enforce [her] right" to such compensation under the statute.

¶21    On appeal, the Commission urges us to give "due weight" to, and affirm, its interpretation of the statute.  In its view, an individual only "attempts to enforce [a] right" under WIS. STAT. § 111.322(2m)(a) if he or she "resort[s] to a governmental agency."  The Commission argues that due weight consideration is appropriate because it used its expertise in the Act to develop its interpretation, the interpretation is longstanding and has not been rejected by the legislature, and

would promote uniformity and consistency of the Act. Radtke disagrees, arguing that the Commission's interpretation is not entitled to any deference[6] and should be rejected because it is "entirely too narrow" and improperly excludes from its scope "oppositional actions," or those "taken by an employee on their own to protest" what they believe to be discriminatory treatment.

¶22 Ultimately, we need not decide whether the Commission's interpretation is entitled to "due weight" consideration because our conclusion would be the same whether or not we gave it that consideration: an individual does not "attempt[] to enforce [a] right" to unpaid overtime under WIS. STAT. § 111.322(2m)(a) merely by asking his or her employer to pay it.

¶23 We begin, as always, with the statutory text. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The parties agree that the key language in WIS. STAT. § 111.322(2m)(a) is the phrase "attempts to enforce." Neither "attempts" nor "enforce" is defined in Chapter 111, and no published Wisconsin decision has interpreted those terms in this statute, so we must accord them their "common, ordinary, and accepted meaning." *See Kalal*, 271 Wis. 2d 633, ¶45. We must also interpret the statute "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

---

[6] Though Radtke uses the word "deference," we understand her argument to be that we should not give the Commission's reading "due weight." The two concepts are not the same. "'[D]ue weight' means giving 'respectful, appropriate consideration to the agency's views' while the court exercises its independent judgment in deciding questions of law…. 'Due weight' is a matter of persuasion, not deference." *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶78, 382 Wis. 2d 496, 914 N.W.2d 21.

¶24    The parties offer various dictionary definitions of "attempt" and "enforce," which are relevant to determine common and accepted meaning. *See Stroede v. Society Ins.*, 2021 WI 43, ¶12, 397 Wis. 2d 17, 959 N.W.2d 305.  When used as a verb, "attempt" is defined as "to make an effort to do, accomplish, solve or effect" or similarly, "[t]o try to perform, make, or achieve."  *See Attempt*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) (first quotation); *Attempt*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=attempt (last visited December 19, 2024) (second quotation).  "Enforce" can have different meanings depending on the context in which it is used.  *See generally Enforce,* WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993).  Here, WIS. STAT. § 111.322(2m)(a) uses the term "enforce" with reference to rights found in various Wisconsin statutes.  Where "enforce" is used with respect to legal rights or requirements, it has been defined as "to put in force: cause to take effect:  give effect to, esp. with vigor," or "[t]o compel observance of or obedience to."  *See Enforce,* WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) (first quotation); *Enforce*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=enforce (last visited December 19, 2024) (second quotation); *see also Enforce*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "enforce" as "[t]o give force or effect to (a law, etc.); to compel obedience to").

¶25    Putting these definitions together, a person may "attempt to enforce [a] right" under WIS. STAT. § 111.322(2m)(a) if he or she "make[s] an effort" or tries to "compel observance of or obedience to" that right.  Though paragraph (2m)(a) applies to *attempts* to enforce a right, as opposed to merely completed enforcement, there is an element of compulsion or force that is inherent in this use

13

of "enforce" that supports the Commission's interpretation of the provision as requiring some resort to a government authority.

¶26     We also look to other language in the same statutory subsection for context.  *See supra* ¶13 n.3.  As the Commission states, the other protected activity in WIS. STAT. § 111.322(2m)(a)—filing a complaint—involves "resort to civil authority."  Similarly, the other acts protected in § 111.322(2m)—"testif[ying] or assist[ing] in any action or proceeding" conducted pursuant to certain statutes— involves a formal legal proceeding.  Sec. 111.322(2m)(b), (bm).

¶27     The Commission contrasts these activities with language in the next subsection, WIS. STAT. § 111.322(3), that prohibits discriminating against an "individual because he or she has opposed any discriminatory practice under this subchapter."[7]  *See supra* ¶13 n.3.  It argues that the word "oppose" encompasses a broader swath of conduct, including "self-help" measures that do not necessarily involve resorting to a court or other governmental authority to vindicate a legal right.

¶28     We conclude that the Commission's reading of WIS. STAT. § 111.322(3) is correct and that it provides valuable context in determining the meaning of "attempts to enforce" in § 111.322(2m)(a).  The verb "oppose" means "[t]o be or act in contention or conflict with" or "[t]o be hostile or resistant to; try to prevent."  *See Oppose*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE,  https://www.ahdictionary.com/word/search.html?q=oppose

---

[7] WISCONSIN STAT. § 111.322(2m) prohibits retaliation for certain activities under statutes other than the Act.  Section 111.322(3), in contrast, prohibits retaliation for certain conduct under the Act.

(last visited December 20, 2024). To "oppose" an allegedly discriminatory practice thus means to be in conflict with it, to resist it, or to try to prevent it. One may oppose allegedly discriminatory treatment without necessarily resorting to a government agency. "Oppose" sweeps more broadly than "enforce" and can include what the Commission describes as "self-help" efforts, such as an individual communicating an objection to the treatment to the employer.

¶29 Radtke's arguments do not persuade us that the Commission's interpretation of WIS. STAT. § 111.322(2m)(a) is unsound. She argues that the Commission's interpretation is at odds with WIS. STAT. § 111.31(3), which states that the Act is to "be liberally construed" to further the policy of "encourag[ing] and foster[ing] to the fullest extent practicable the employment of all properly qualified individuals[.]" *See* § 111.31(3). This argument fails because the directive to interpret the Act liberally does not allow us to construe "attempts to enforce" in § 111.322(2m)(a) "to include something that it plainly does not." *See* ***Vega v. LIRC***, 2022 WI App 21, ¶35, 402 Wis. 2d 233, 975 N.W.2d 249.

¶30 Radtke also contends that "the most reasonable reading" of WIS. STAT. § 111.322(2m)(a) is that it has the same scope as § 111.322(3). By that she means that both provisions prohibit retaliation against an employee who takes "participatory" actions, such as filing a complaint or testifying in a legal proceeding, and "oppositional" actions. We do not agree; only § 111.322(3) protects employee opposition to discriminatory practices. Section 111.322(2m)(a) only applies when an individual "files a complaint or attempts to enforce [a] right," and we must assume from the different words in these paragraphs that the legislature meant them to have different meanings. *See* ***Augsburger v. Homestead Mut. Ins. Co.***, 2014 WI 133, ¶17, 359 Wis. 2d 385, 856 N.W.2d 874 (citation omitted) ("When the legislature chooses to use two different words, we generally

consider each separately and presume that different words have different meanings.").

¶31    Finally, Radtke argues that an "oppositional act of an employee … may be the first step in securing [the] employee's rights."  That may be true, but it does not transform an "oppositional act" like asking to be compensated for overtime into an attempt to enforce a right.  It is not difficult to envision a dispute between an employer and an employee over unpaid overtime starting with the employee asking to be compensated.  But until the employee tries to enlist the help of a government agency to obtain that compensation, he or she has not "attempt[ed] to enforce [his or her] right" to it.

## II.    Substantial Evidence Supports the Commission's Finding that Vaportek did not Believe Radtke Might Attempt to Enforce Her Right to Compensation for Unpaid Overtime.

¶32    The Commission also challenges the circuit court's conclusion that the Commission's ultimate factual finding that Vaportek did not believe that Radtke might file a wage complaint concerning her unpaid overtime when it terminated her employment was not supported by substantial evidence.  This challenge relates to WIS. STAT. § 111.322(2m)(d), which prohibits an employer from discharging an individual if it "believes that the individual engaged or may engage in any activity" protected under the statute, including as relevant here, filing a wage complaint.  Based on its ultimate factual finding, the Commission concluded there was no probable cause to believe Vaportek violated this statute.  We conclude that the Commission's ultimate finding of fact is supported by substantial evidence.

¶33    As noted above, substantial evidence supports a factual finding if, "after considering all the evidence of record, reasonable minds could arrive at the

conclusion reached by the trier of fact." ***Wisconsin Bell***, 382 Wis. 2d 624, ¶30 (citation omitted). "Our role on appeal is to search the record for evidence supporting [the Commission]'s factual determinations, not to search for evidence against them." ***Robles v. Thomas Hribar Truck & Equip., Inc.***, 2020 WI App 74, ¶8, 394 Wis. 2d 761, 951 N.W.2d 853. "Further, if the evidence supports more than one reasonable inference, the agency's inference is conclusive." ***DOR v. A. Gagliano Co., Inc.***, 2005 WI App 170, ¶32, 284 Wis. 2d 741, 702 N.W.2d 834.

¶34 The Commission argues that substantial evidence supports its finding that Vaportek did not believe that Radtke might file a wage complaint. In support, it points to the following: (1) Radtke did not say anything before or on January 11 to suggest that she intended to file a wage complaint related to her unpaid overtime; and (2) Radtke only stated that Vaportek should compensate her for unpaid overtime on January 11 when she learned that Vaportek would be reducing her pay, and she did not raise the issue again at the afternoon meeting that day. The Commission also noted in its decision that Radtke did not inform Vaportek that she had, or was considering, contacting an attorney, "or even that she believed her legal rights had been violated." Finally, the Commission also observed that "[Vaportek]'s witnesses testified that they did not believe [Radtke] was planning to file a wage claim[.]" We agree that these factual findings support the Commission's ultimate finding of fact that Vaportek did not believe Radtke was planning to, or might, file a wage claim.

¶35 Nevertheless, Radtke notes, she did ask that her overtime be paid, and she contends that "[a]n employee need not make an explicit threat to file a complaint" to be protected under the statute. She also argues that Vaportek knew it had violated the law in respect to payment for overtime when it terminated Radtke's employment.

17

¶36 Keeping in mind that "any reasonable view of the evidence is sufficient" to sustain the Commission's findings, *see **Bernhardt***, 207 Wis. 2d at 298, a reasonable person could find that Vaportek did not believe that Radtke might file a wage complaint when it terminated her employment despite her request for overtime pay. As regards Vaportek's purported knowledge that it had not complied with the law concerning payment of overtime, Radtke overlooks the Commission's findings that Schneider: (1) told Radtke that she would look into the overtime issue; (2) sought advice from Vaportek's human resources consultant about it; and (3) following that consultation, assured Radtke that she would be paid for overtime going back two years. One could reasonably conclude from these findings that Vaportek did not believe Radtke would file a wage complaint when it terminated her employment because it had committed to pay her the overtime that it understood was required under the law and thus had no reason to believe she had a basis for an unpaid overtime claim.

¶37 While Radtke emphasizes the close proximity between her comment about unpaid overtime and Vaportek's termination of her employment, it is not our role to reweigh the evidence or reassess the witnesses' credibility. Our review is limited to searching for evidence to support the Commission's finding, and here we conclude that the evidence highlighted by the Commission is sufficient to support its conclusion of no probable cause. It is Radtke's burden to establish a basis to overturn the Commission's decision, *see **Wingra Redi-Mix***, 408 Wis. 2d 563, ¶40, and she has failed to do so.[8]

---

[8] Radtke contends that ***TCAT Corp. v. LIRC***, No. 2016AP1779, unpublished slip op. (WI App Aug. 24, 2017), supports her arguments. ***TCAT*** is an unpublished per curiam decision that may not be cited as precedent or persuasive authority. *See* WIS. STAT. RULE 809.23(3)(a). Accordingly, we need not discuss it further.

**CONCLUSION**

¶38 For the reasons stated above, we reverse the circuit court's order and reinstate the Commission's decision concluding that Radtke failed to establish probable cause to believe that Vaportek terminated her employment in violation of the Act.

*By the Court.*—Order reversed.

Recommended for publication in the official reports.